**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

PETER BERNEGGER,

       *Plaintiff*,

  v.

EXECUTIVE OFFICE FOR UNITED
STATES ATTORNEYS,

       *Defendant.*

Civil Action No. 17-563 (RDM)

## <u>MEMORANDUM OPINION AND ORDER</u>

      Peter Bernegger was convicted of mail and bank fraud in 2009 in the U.S. District Court for the Northern District of Mississippi. Since then, he has filed a number of lawsuits against individuals involved in his criminal case, alleging that they engaged in various forms of misconduct. In support of this effort, Bernegger submitted a Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and Privacy Act, 5 U.S.C. § 552a, request to the Executive Office for United States Attorneys ("EOUSA"), seeking electronic communications to or from three Assistant United States Attorneys ("AUSAs") or "their legal secretaries" between the dates of March 1, 2007 and August 15, 2016, containing any reference to him, his case, or any of a list of individuals involved in his case. Dkt. 1; Dkt. 11; Dkt. 22-2 at 2–4 (Def.'s SUMF ¶ 6). When EOUSA failed to release the records he sought, Bernegger filed this suit to compel it to do so. Although EOUSA eventually released hundreds of responsive records in full or with redactions, Bernegger remains unsatisfied and asks the Court to compel EOUSA to release all of the records he sought in full.

The case is now before the Court on the parties' cross-motions for summary judgment and Bernegger's motion for discovery. For the reasons explained below, the Court will **GRANT** in part and **DENY** in part EOUSA's motion for summary judgment, Dkt. 22, will **DENY** Bernegger's motion for partial summary judgment, Dkt. 29, and will **DENY** Bernegger's motion for discovery, Dkt. 30.

## I. BACKGROUND

Plaintiff Peter Bernegger was convicted in 2009 of mail and bank fraud. *United States v. Bernegger*, 661 F.3d 232, 234–36 (5th Cir. 2011); *Bernegger v. United States*, No. 1:07CR176, 2015 WL 1013857, at *1 (N.D. Miss. Mar. 9, 2015). After he was convicted, Bernegger filed multiple lawsuits seeking to expose the "corrupt[ion]," "misconduct," "fraud," and "lies" of nearly 20 people involved in his criminal case, including judges, judicial staff, state officials, and prosecutors. *In re Bernegger*, No. 3:15CV182, 2015 WL 8347587, at *8–10 (N.D. Miss. Dec. 8, 2018). Bernegger's actions reached the point that, in 2015, a district court in the Northern District of Mississippi determined that it was necessary to "impose a sanction designed to curb Mr. Bernegger's penchant for abusing judicial process by filing frivolous and malicious pleadings, motions, and communications with the court," and thus required that he submit any future cases he wishes to file to the Chief Judge for screening. *Id.* at *11–12.

On August 13, 2016, Bernegger submitted a FOIA and Privacy Act request to EOUSA, seeking "all emails and/or other electronic communications of AUSA Robert J. Mims, AUSA Clyde McGee, AUSA David Sanders . . . and of their legal secretaries" that referred to him, his criminal case or case number, or a list of lawyers, court personnel, and others. Dkt. 22-3 at 27–28 (Stone Decl. Ex. B). He specified, moreover, that his request was intended to cover the period from March 1, 2007 through August 15, 2016. *Id.* at 28 (Stone Decl. Ex. B). Bernegger

later expanded his request to include emails to or from a probation officer in the Northern District of Mississippi. *Id.* at 32 (Stone Decl. Ex. C). On November 1, EOUSA sent Bernegger a letter acknowledging receipt of his request and informing him that his request, like all others, would be processed on a "first in, first out" basis. *Id.* at 38 (Stone Decl. Ex. D). On March 13, 2017, EOUSA sent Bernegger a second letter—this time informing him that "[t]he FOIA point of contact for the [U.S. Attorney's Office for the] Northern District of Missouri" had begun the process of searching for responsive records and "estimate[d] [that] approximately 1,375 pages of potentially responsive records [had] been located." *Id.* at 41 (Stone Decl. Ex. E). The letter also asked that Bernegger agree to the estimated duplication fee associated with his request. *Id.* at 43 (Stone Decl. Ex. E).

On March 29, 2017, Bernegger filed this suit to compel EOUSA to release all records responsive to his request. *See* Dkt. 1. Between August 2017 and December 2017, EOUSA released to Bernegger 72 pages of records in full and 88 pages of records in part, withholding 130 pages of records in full. Dkt. 22-3 at 4 (Stone Decl. ¶¶ 12, 14–15). EOUSA also referred certain records to the Internal Revenue Service ("IRS") and the Federal Bureau of Investigation ("FBI") to review, "since the records originated with those agencies." *Id.* at 4 (Stone Decl. ¶ 12). The IRS released all the records that were referred to it, *id.* at 50 (Stone Decl. Ex. J), while the FBI released 8 pages in full, 11 pages in part, and withheld in full 77 pages of records, Dkt. 22-5 at 2–3 (Hardy Decl. ¶¶ 4, 8). Bernegger does not challenge the FBI's decision to withhold any of these records in whole or in part, nor does he claim that the IRS has failed to release any responsive records. Dkt. 31 at 8.

EOUSA has now moved for summary judgment, submitting that it has conducted an adequate search and that its withholdings and redactions were justified under FOIA and the

Privacy Act. Dkt. 22. EOUSA supports its motion with the declarations of Princina Stone, an Attorney-Advisor with the FOIA staff of EOUSA, Dkt. 22-3 at 1 (Stone Decl. ¶ 1); Brenda Gill, the FOIA Point of Contact for the United States Attorney's Office for the Northern District of Mississippi during the time Bernegger submitted his FOIA request, Dkt. 22-4 at 1 (Gill Decl. ¶ 1); and David Hardy, Section Chief of the Record/Information Dissemination Section of the Records Management Division with the FBI, Dkt. 22-5 at 1 (Hardy Decl. ¶ 1).

Bernegger opposes EOUSA's motion on numerous grounds. He challenges the adequacy of EOUSA's search and all of its withholdings and redactions, arguing—among other things— that there is a discrepancy between the number of pages of records that it originally found and the number of pages it has subsequently accounted for; that EOUSA's declarations are not based on personal knowledge and are thus invalid; that it failed to conduct an adequate search and improperly invoked various FOIA exemptions; and that the government's "bad faith" precludes EOUSA from withholding any responsive records in whole or in part. Dkt. 31. Moreover, relying on the same arguments, Bernegger argues that he is entitled to the entry of "partial summary judgment" in his favor, Dkt. 29, or, in the alternative, to discovery, Dkt. 30.

## II. LEGAL STANDARD

The Freedom of Information Act is premised on the notion that "an informed citizenry is "vital to the functioning of a democratic society . . . [and] needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). The Act embodies a "general philosophy of full agency disclosure." *U.S. Dep't of Def. v. Fed. Labor Relations Auth.*, 510 U.S. 487, 494 (1994) (quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 360 (1976)). It thus mandates that an agency disclose records on request unless they fall within one of nine exemptions. "These exemptions are 'explicitly made

4

exclusive' and must be 'narrowly construed.'" *Milner v. Dep't of Navy*, 562 U.S. 562, 565

(2011) (quoting *EPA v. Mink*, 410 U.S. 73, 79 (1973), and *FBI v. Abramson*, 456 U.S. 615, 630

(1982)).

FOIA cases are typically resolved on motions for summary judgment under Federal Rule

of Civil Procedure 56. *See Beltranena v. U.S. Dep't of State*, 821 F. Supp. 2d 167, 175 (D.D.C.

2011). To prevail on a summary judgment motion, the moving party must demonstrate that there

are no genuine issues of material fact and that he or she is entitled to judgment as a matter of

law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). In a FOIA action, the agency

may meet its burden by submitting "relatively detailed and non-conclusory" affidavits or

declarations, *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991), and an index

of the information withheld, *Vaughn v. Rosen*, 484 F.2d 820, 827–28 (D.C. Cir. 1973); *Summers*

*v. Dep't of Justice*, 140 F.3d 1077, 1080 (D.C. Cir. 1998). An agency "is entitled to summary

judgment if no material facts are in dispute and if it demonstrates 'that each document that falls

within the class requested either has been produced . . . or is wholly exempt from the [FOIA's]

inspection requirements.'" *Students Against Genocide v. Dep't of State*, 257 F.3d 828, 833 (D.C.

Cir. 2001) (quoting *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978)). The Court reviews the

agency's decision *de novo*, and the agency bears the burden of sustaining its action. 5 U.S.C.

§ 552(a)(4)(B).

### III.  ANALYSIS

Bernegger's principal contentions fall into four categories: First, he claims that

EOUSA's own estimation of the number of pages of potentially responsive records shows that it

has failed to release hundreds of pages of records. Second, he argues that neither of the

declarations that EOUSA relies upon in its motion were based on personal knowledge, and thus

neither can support the entry of summary judgment. Third, he contends that EOUSA's search for responsive records was inadequate in various respects. Fourth, he challenges EOUSA's reliance on the asserted FOIA exemptions and argues that the government's "bad faith" vitiates any defense to release of all of the records sought in his FOIA request. The Court will consider each set of arguments in turn.

## A.     "Missing" Records

Bernegger first argues that he is entitled to the release of 540 records that were not released, listed in EOUSA's *Vaughn* index, or otherwise identified as exempt from disclosure. Dkt. 31 at 9–12. He apparently derives this number of "missing" records by starting with the assertion in EOUSA's March 13, 2017 letter, in which it asserted that the FOIA "point of contact" for the U.S. Attorney's Office in the Northern District of Mississippi "estimate[d]" that "approximately 1,375 pages of potentially responsive records [had] been located." Dkt. 22-3 at 41 (Stone Decl. Ex. E). Bernegger then subtracted from 1,375 the number of pages of records that EOUSA eventually released, identified in its *Vaughn* index, or identified as duplicates, and arrived at the conclusion that 540 "records" are "missing." *See* Dkt. 31 at 9–10. The Court is unpersuaded.

To start, EOUSA's March 13, 2017 letter never states that the U.S. Attorney's Office had identified 1,375 responsive records. Rather, it merely "estimate[d]" that it had located 1,375 "pages"—not records—of "potentially responsive"—not responsive—materials. Dkt. 22-3 at 41 (Stone Decl. Ex. E). Brenda Gill, the FOIA contact for the U.S. Attorney's Office in the Northern District of Mississippi, explains in her supplemental declaration that she originally searched for "*all* communications" contained in Bernegger's file and that she based her "estimate" of "potentially responsive" materials, *id.* (Stone Decl. Ex. E), on that overly expansive search. Dkt. 32-2 at 1–2 (Supp. Gill Decl. ¶¶ 2–5) (emphasis added). The scope of

her search, and the number of potentially responsive pages, was narrowed when "it was [subsequently] determined that [Bernegger's] request" did not include "all communications" in his file. *Id*. at 5 (Supp. Gill Decl. ¶ 5).

Needless to say, an estimate does not create an entitlement to that number of pages of records. EOUSA was required to release or lawfully withhold only those records within the scope of Bernegger's request. The Court is convinced by the uncontroverted evidence that it did so and that the discrepancy between EOUSA's initial estimation and its ultimate response is not the product of bad faith and is not evidence that any of the requested records are "missing."

**B.     Adequacy of Declarations**

Bernegger also argues that the declarations that EOUSA relies upon—one from Princina Stone, an Attorney-Advisor in on EOUSA's FOIA/Privacy Act staff, and one from Brenda Gill, the FOIA "Point of Contact" for the U.S. Attorney's Office for the Northern District of Mississippi—are "invalid, null, and void" because they "fail[] the 'personal knowledge' requirement" of Federal Rule of Civil Procedure 56(c). Dkt. 31 at 12. As Bernegger correctly observes, Rule 56(c) provides that a declaration "used to support" a motion for summary judgment "must be made on personal knowledge." Fed. R. Civ. P. 56(c). From this non-controversial premise, however, he incorrectly contends that the Stone and Gill declarations—and the *Vaughn* index that accompanies the Stone declaration—"must be struck" because both declarants merely attest that their declarations are "true and correct" to "the best of [their] knowledge and belief," Dkt. 31 at 12–15, and because neither declares to "have personal, or first hand, knowledge" of all of the relevant information. *Id.* at 14.

Bernegger misunderstands the personal knowledge requirements for FOIA declarations. In the FOIA context, a declarant "satisfies the personal knowledge requirement in Rule [56(c)] if[,] in his declaration, [he] attests to his personal knowledge of the procedures used in handling

[a FOIA] request and his familiarity with the documents in question." *Barnard v. Dep't of Homeland Sec.*, 531 F. Supp. 2d 131, 138 (D.D.C. 2008) (internal quotation marks and alterations omitted); *see also Johnson v. United States*, 239 F. Supp. 3d 38, 43 (D.D.C. 2017); *Inst. for Policy Studies v. CIA*, 885 F. Supp. 2d 120, 134 (D.D.C. 2012); *Hall v. Dep't of Justice,* 63 F. Supp. 2d 15, 16 n.1 (D.D.C. 1999). A FOIA declarant, moreover, "may include statements in [his] declaration[] based on information [he] ha[s] obtained in the course of [his] official duties." *Barnard*, 598 F. Supp. 2d at 19; *see also Hainey v. U.S. Dep't of the Interior*, 925 F. Supp. 2d 34, 41 (D.D.C. 2013); *Thompson v. EOUSA*, 587 F. Supp. 2d 202, 207 (D.D.C. 2008). The Stone and Gill declarations satisfy this standard, and, indeed, do not differ in any relevant respect from the types of declarations that are routinely filed, and relied upon, in FOIA cases.

As an initial matter, both declarants establish their competence "to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Stone is an attorney-advisor who works in EOUSA's FOIA unit, where she "serve[s] as a liaison among other divisions and offices of the" Department of Justice and "provide[s] advice on responding to requests for access to information located in . . . the 93 United States Attorneys' Offices." Dkt. 22-3 at 1 (Stone Decl. ¶ 1). More to the point, she is "familiar with the procedures followed by [her] office in responding to the FOIA request[]" that Bernegger submitted, and her declaration is based "upon [her] personal knowledge, information provided to [her] in [her] official capacity, and determinations made in accordance" with that information. *Id.* at 2 (Stone Decl. ¶¶ 2–3). Gill, in turn, was the FOIA point of contact for the U.S. Attorney's Office for the Northern District of Mississippi at the relevant time, where her "duties included receiving and reviewing requests made pursuant to FOIA" and the Privacy Act. Dkt. 22-4 at 1 (Gill Decl. ¶¶ 1–2). She was responsible, moreover, "for conducting searches within" the U.S. Attorney's Office "for records responsive to FOIA"

and Privacy Act requests; she is "familiar with the procedures followed by" her office in responding to FOIA and Privacy Act requests, and, significantly, was personally involved in responding to Bernegger's request. *Id.* at 1–6 (Gill Decl. ¶¶ 3–4, 7–20). Nothing more is required to offer competent testimony on the topics addressed in the Stone and Gill declarations.

Accordingly, Bernegger's objections to EOUSA's declarations and accompanying *Vaughn* index are without merit.

## C. Adequacy of Search

Bernegger also challenges the adequacy of EOUSA's search for responsive records. *See* Dkt. 31 at 19–21. The adequacy of an agency's search for records "is analyzed under the same standard" for purposes of both FOIA and the Privacy Act. *Thompson v. U.S. Dep't of Justice*, 146 F. Supp. 3d 72, 82 (D.D.C. 2015). Under both statutes, the adequacy of the "search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry [it] out." *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003). The agency "cannot limit its search to only one record system if there are others that are likely to turn up the information requested," but, at the same time, it need not "search every record system." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). Similarly, the agency need not deploy every conceivable search term or permit the FOIA requester to dictate the search terms in the course of litigation, but it must use terms reasonably calculated to locate responsive records. *See Agility Pub. Warehousing Co. K.S.C. v. NSA*, 113 F. Supp. 3d 313, 339 (D.D.C. 2015) ("Where the search terms are reasonably calculated to lead to responsive documents, the Court should not 'micro manage' the agency's search."); *see also Physicians for Human Rights v. U.S. Dep't of Def.*, 675 F. Supp. 2d 149, 164 (D.D.C. 2009) ("[Agencies have] discretion in crafting lists of search terms that they believe[] to be reasonably tailored to uncover documents responsive to the FOIA request.").

The "agency fulfills its obligations under FOIA" and the Privacy Act "if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990)). To prevail on summary judgment, the agency must submit declarations that "'denote which files were searched,' [and] by whom those files were searched, and [that] reflect a 'systematic approach to document location.'" *Liberation Newspaper v. U.S. Dep't of State*, 80 F. Supp. 3d 137, 144 (D.D.C. 2015) (quoting *Weisberg v. U.S. Dep't of Justice*, 627 F.2d 365, 371 (D.C. Cir. 1980)); *see also Baker & Hostetler LLP v. U.S. Dep't of Commerce*, 473 F.3d 312, 318 (D.C. Cir. 2006); *Oglesby*, 920 F.2d at 68. Those declarations "are accorded a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Servs.*, 926 F.2d at 1200 (quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981)). But where "a review of the record raises substantial doubt, particularly in view of 'well defined requests and positive indications of overlooked materials,' summary judgment is inappropriate." *Valencia-Lucena*, 180 F.3d at 326 (citation omitted).

Bernegger's first challenge to the adequacy of EOUSA's search merely repeats his contention that the Stone and Gill declarations are "defective," Dkt. 31 at 19–20, which the Court has already rejected. He further argues that EOUSA's motion is based on the "blatantly false claim" that "Mr. Bernegger requested communications about his criminal case that were sent to and from three specific AUSA[]s and their legal assistants." *Id.* at 20 (quoting Dkt. 22-1 at 18). This characterization of the scope of his request is incorrect, Bernegger argues, because his request was "not limit[ed]" to "just his 'criminal case,'" or to only communications between the "AUSA[s] and their legal assistants." *Id.* The evidence shows, however, that the U.S.

Attorney's Office conducted a search for the records Bernegger sought and did not limit its search to records from "his 'criminal case.'"  As Gill explains in her declaration, she searched for emails "sent to or sent from AUSAs Mims, McGee, Sanders or their legal secretaries" and that, at her request, AUSA Mims and McGee "searched their computers for electronic communications."  Dkt. 22-4 at 4–5 (Gill Decl. ¶¶ 15–16).

More generally, the Court is convinced that the government engaged in a thorough search for responsive records.  Although the U.S. Attorney's Office had not retained electronically stored information ("ESI") for "four former employees" referenced in Bernegger's FOIA/Privacy Act request—one of the named AUSAs and three legal secretaries—it was "able to obtain ESI . . . from four other former legal secretaries," and it searched those files for responsive records. *Id.* at 3–4 (Gill Decl. ¶¶ 14–15).  In addition, Gill "made inquiries of all current employees"— including AUSAs Mims and McGee—"who [had] access to records" likely to contain material "responsive to [Bernegger's] FOIA request," and she searched both electronic and "hard-copy" files for potentially responsive records.  *Id.* at 5 (Gill Decl. ¶¶ 16–17).  Among other things, she searched email records for "the captioned names or number of plaintiff's criminal case" and searched those emails for "any that were sent to or sent from AUSAs Mims, McGee, Sanders, or their legal secretaries."  *Id.* at 4 (Gill Decl. ¶ 15).  In her supplemental declaration, moreover, Gill attests that office personnel working at her direction searched AUSA Mims and AUSA McGee's computers "using the case numbers listed in" Bernegger's FOIA request, as well as "eight multiple variables of [those] numbers," and also searched for records containing the name "Bernegger."  Dkt. 32-2 at 2–3 (Supp. Gill Decl. ¶¶ 9–10).  It is also clear from the Gill declaration that the U.S. Attorney's Office did not narrow its search, as Bernegger contends, to emails between the specified AUSAs and their secretaries or to emails pertaining to Bernegger's

criminal case.  Rather, as requested, the office searched for any emails that referenced Bernegger's name *or* the specified criminal case numbers, as well as emails sent to or received by the specified AUSAs and their legal secretaries.

Finally, Bernegger challenges the adequacy of the search on the ground that EOUSA has not "disclosed" "the age of the computers" that were searched, and it is possible that the computers or hard drives were replaced in the time that passed between 2009 and the relevant searches.  Dkt. 31 at 20.  That may be true, but it does not call into question the adequacy of the search.  Even if computers or hard drives were replaced, there is no reason to believe that the U.S. Attorney's Office kept the old computers or hard drives, and, indeed, Gill attested that she is "not aware of any other locations . . . where any other records that might be responsive to plaintiff's requests are likely to be located."  Dkt. 22-4 at 6 (Gill Decl. ¶ 21).  Like all FOIA requesters, Bernegger is "entitled only to records that an agency has in fact chosen to create and retain."  *Yeager v. DEA*, 678 F.2d 315, 321 (D.C. Cir. 1982).

Accordingly, the Court concludes that EOUSA has conducted an adequate search for responsive records.

## D.     Exemptions Applied

EOUSA declined to release all or portions of certain records pursuant to FOIA Exemptions 5, 6, and 7(C).[1]  For the most part, Bernegger does not address the application of these exemptions to specific records but, rather, broadly asserts that "[a]ll of the . . . records located must be released in full . . . [because] there was gross government misconduct" in his

---

[1] EOUSA also invoked Exemption 7(F), which applies to information compiled for law enforcement purposes the disclosure of which "could reasonably be expected to endanger the life or physical safety of any individual."  5 U.S.C. § 552(b)(7)(F).  Because EOUSA also invoked Exemptions 6 and 7(C) to protect the same records, and because the Court concludes that it lawfully invoked those exemptions, the Court need not separately address Exemption 7(F).

criminal case.  Dkt. 31 at 23.  He then goes on for over twenty pages to detail accusations of misconduct that he claims took place during the prosecution of his criminal case.  *Id.* at 22–40, 45–46.  Buried in this discourse, however, Bernegger does raise a handful of more targeted contentions.  With two minor exceptions, the Court is unpersuaded by Bernegger's arguments.

       1.     *Exemption 6 & 7(C)*

       FOIA Exemptions 6 and 7(C) protect personal privacy.  Although both exemptions protect similar interests, they differ in scope.  Exemption 6 shields "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  "[T]he mere fact that an agency file or record contains personal, identifying information," however, "is not enough to invoke Exemption 6;" in addition, the information must be "of such a nature that its disclosure would constitute a clearly unwarranted privacy invasion."  *Judicial Watch, Inc. v. U.S. Dep't of State*, 282 F. Supp. 3d 36, 49–50 (D.D.C. 2017) (quoting *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 32 (D.C. Cir. 2002)).  This, in turn, requires a two-part analysis.  *See Edelman v. SEC*, 302 F. Supp. 3d 421, 425 (D.D.C. Mar. 23, 2018).  The Court must first determine whether "disclosure would compromise a substantial, as opposed to a *de minimis*, privacy interest."  *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 874 (D.C. Cir. 1989).  If the agency clears that hurdle, the Court must then "balance the privacy interest in non-disclosure against the public interest" in disclosure.  *Consumers' Checkbook Ctr. for the Study of Servs. v. U.S. Dep't of Health & Human Servs.*, 554 F.3d 1046, 1050 (D.C. Cir. 2009); *see also Judicial Watch, Inc.*, 282 F. Supp. 3d at 49−50.  The analysis of the "public interest" necessarily focuses on the core purpose for which FOIA was enacted, that is, to 'shed[] light on an agency's performance of its statutory duties.'"  *Davy v. CIA*, 357 F. Supp. 2d 76, 87 (D.D.C. 2004) (quoting *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989)).

Exemption 7(C), in contrast, applies to a narrower category of records than Exemption 6, but it offers more robust protection of those records. *See Tracy v. U.S. Dep't of Justice*, 191 F. Supp. 3d 83, 95 (D.D.C. 2016). Unlike Exemption 6, Exemption 7(C) applies only to records "compiled for law enforcement purposes." 5 U.S.C. § 552(b)(7)(C). But, while Exemption 6 is limited to records "the disclosure of which would constitute a clearly unwarranted invasion of personal privacy," *id.* § 556(b)(6), "[t]he adverb 'clearly' . . . is not used in Exemption 7(C)," *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 165 (2004). Moreover, while "Exemption 6 refers to disclosures that 'would constitute' an invasion of privacy, Exemption 7(C) encompasses any disclosure that 'could reasonably be expected to constitute' such an invasion." *Reporters Comm. for Freedom of the Press*, 489 U.S. at 756.

Relying on both Exemption 6 and Exemption 7(C), EOUSA has withheld "names, address[es,] and telephone numbers of AUSAs, legal assistants, law enforcement officers, and other personally identifiable information related to witness or nonparty individuals." Dkt. 22-3 at 8 (Stone Decl. ¶ 32); Dkt. 22-3 at 13–26 (Stone Decl. Ex. A). According to EOUSA, the individuals whose personal information was withheld have a strong privacy interest here because Bernegger has engaged in a campaign of "harassment of individuals involved in his criminal case and [he has a] penchant . . . for filing frivolous civil suits" against those individuals. Dkt. 22-1 at 26. In response, Bernegger argues that neither exemption applies because any privacy interest is outweighed by the public interest in exposing "corruption or malfeasance" on the part of those public employees. Dkt. 31 at 23.

The information at issue here involves cognizable privacy interests. It includes "names, address[es,] and telephone number of AUSAs, legal assistants, law enforcement officers, and other personally identifiable information related to witnesses and other nonparty individuals,"

Dkt. 22-3 at 8 (Stone Decl. ¶ 32), and EOUSA has shown that there is reason to believe that Bernegger will "harass[]" or "retaliat[e] against those individuals identified," *id.* at 8–9 (Stone Decl. ¶ 33). *See In re Bernegger*, 2015 WL 8347587, at *7 (describing Bernegger's efforts to "punish and frustrate those involved in the investigation and prosecution of the criminal fraud charges against him"). Indeed, "Congress' primary purpose in enacting Exemption 6"—and, by extension 7(C)—"was to protect individuals from the injury and embarrassment that can result from the unnecessary disclosure of personal information." *Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 599 (1982); *see also Garcia v. EOUSA*, 302 F. Supp. 3d 79, 88 (D.D.C. 2018) ("Courts have applied this exemption broadly, holding specifically that Exemption 6 covers such items as a person's name, address, place of birth, employment history, and telephone number." (internal quotation marks omitted)).

The existence of a privacy interest, standing alone, however, is insufficient to support EOUSA's reliance on Exemptions 6 and 7(C). Both exemptions apply only to "unwarranted invasion[s] of personal privacy," 5 U.S.C. §§ 552(b)(6), (b)(7)(C), and thus both require that agencies and courts balance the privacy interest at stake against the public interest in disclosure. *Favish*, 541 U.S. at 171; *Consumers' Checkbook Ctr.*, 554 F.3d at 1050. Bernegger does not take issue with the premise that the redacted information implicates personal privacy, but he argues that any such interest is outweighed by the public interest in exposing government corruption. In the abstract, he is right. But, as applied to the facts of this case, he is not. As the Supreme Court has emphasized, it is not enough for a FOIA requester merely to raise accusations of misconduct; a FOIA requester's "bare suspicion" of government misconduct is insufficient to outweigh a "cognizable" privacy interest. *Favish*, 541 U.S. at 174. Rather, "the requester must produce evidence that would warrant a belief by a reasonable person that the alleged

Government impropriety might have occurred." *Id.* By any measure, Bernegger fails that test. He merely rehashes the "venomous and unsubstantiated allegations of misconduct directed at prosecutors, judges, court staff, witnesses, and others" that other courts have previously considered and rejected. *See In re Bernegger*, 2015 WL 8347587, at *11; *Bernegger*, 2015 WL 1013857, at *2–3. These baseless accusations are insufficient to overcome the privacy interests at stake.

Bernegger also argues that Exemptions 6 and 7(C) do not apply because the personal information at issue is already known to him. Dkt. 31 at 40–41. But agencies releasing records pursuant to FOIA requests must be mindful that "[d]ocuments released in a FOIA action must be made available to the public as a whole." *Stonehill v. IRS*, 558 F.3d 534, 539 (D.C. Cir. 2009); *see also Clay v. U.S. Dep't Justice*, 680 F. Supp. 2d 239, 248 (D.D.C. 2010) ("The FOIA's . . . exemptions are designed to protect those 'legitimate governmental and private interests' that might be 'harmed by release of certain types of information' to the public at large." (quoting *August v. FBI*, 328 F.3d 697, 699 (D.C. Cir. 2003))). In releasing private information, "an agency must operate on the assumption . . . that the recipient will further distribute the information, or that others will seek the same information and reasonably expect similar treatment by the FOIA office." *Sai v. Transp. Sec. Admin.*, 315 F. Supp. 3d 218, 261 (D.D.C. 2018). Moreover, on the facts of this case, EOUSA reasonably concluded that permitting Bernegger to tie the names of government lawyers, their assistants, law enforcement officers, and others to specific communications would likely invite further harassment.

In addition, Bernegger argues that "government employees . . . . have no right whatsoever to privacy when conducting gov[ernment] business on gov[ernment] computers." Dkt. 31 at 45. This argument hardly merits discussion. Suffice it to say, the privacy interest of

federal employees "includes the right to control information related to themselves and to avoid disclosures that '. . . conceivably [could] subject them to annoyance or harassment in either their official or private lives.'" *Elec. Privacy Info. Ctr. v. Dep't of Homeland Sec.*, 384 F. Supp. 2d 100, 116 (D.D.C. 2005) (quoting *Lesar v. U.S. Dep't of Justice*, 636 F.2d 472, 487 (D.C. Cir. 1980)).

Bernegger raises one final argument, however, that EOUSA fails directly to confront and that, at a minimum, requires further briefing and explanation.  As he notes, EOUSA relied on Exemptions 6 and 7(C) to redact identifying information from various emails exchanged between the U.S. Attorney's Office and the U.S. District Court for the Northern District of Mississippi. Dkt. 31 at 42.  Courts have long recognized the important "tradition of public access to records of a judicial proceeding." *United States v. Hubbard*, 650 F.2d 293, 314 (D.C. Cir. 1980).  That tradition "serves the important functions of ensuring the integrity of judicial proceedings in particular and of the law enforcement process more generally." *Id.* at 315.  Although that "tradition of access is not without . . . exceptions," *id.*, the public interest in access to judicial filings is undeniable.  The fact that the communications at issue here occurred by email, moreover, may signal that they were ministerial, but it does not alter their essential character as "records of a judicial proceeding."  And, just as the names and contact information of those who appear on pleadings and other judicial records is usually a matter of public record, it is far from evident why similar information contained in judicial records taking the form of email should not receive similar treatment.

Notwithstanding all of this, there may be good reasons for the redactions that EOUSA made in the email correspondence with the court.  Those reasons, however, are not included in EOUSA's filings to date, and, accordingly, the Court cannot—at least on the present record—

grant summary judgment in favor of EOUSA with respect to the redactions from the email correspondence with the court.

In sum, the Court concludes that EOUSA properly withheld the documents and portions of documents pursuant to Exemption 6 and 7(C), with the exception of the redactions to the email correspondence with the U.S. District Court for the Northern District of Mississippi. In light of this conclusion, EOUSA should either (1) re-release the correspondence with the court without the Exemption 6 and 7(C) redactions, or (2) file a further declaration explaining in greater detail why it submits that the redactions are appropriate.

2.      *Exemption 5*

Exemption 5 protects "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). This exemption shields "those documents . . . normally privileged in the civil discovery context." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975). Courts have, accordingly, incorporated the three traditional civil discovery privileges under Exemption 5: "(1) the attorney work-product privilege; (2) the deliberative process privilege; and (3) the attorney-client privilege." *Wright v. U.S. Dep't of Justice*, 121 F. Supp. 3d 171, 184 (D.D.C. 2015). Bernegger challenges EOUSA's invocation of the deliberative process privilege. *See* Dkt. 31 at 39.

The deliberative process privilege protects "documents 'reflecting advisory opinions, recommendations[,] and deliberations comprising part of a process by which governmental decisions and policies are formulated.'" *Sears, Roebuck & Co.*, 421 U.S. at 150 (quoting *Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena*, 40 F.R.D. 318, 324 (D.D.C. 1966)). The "privilege rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and its object is to enhance 'the

quality of agency decisions,' . . . by protecting open and frank discussion among those who make

them within the Government." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532

U.S. 1, 8–9 (2001) (citations omitted). "Manifestly, the ultimate purpose of this long-recognized

privilege is to prevent injury to the quality of agency decisions." *Sears, Roebuck & Co.*, 421

U.S. at 151. In responding to Bernegger's FOIA request, EOUSA withheld documents and

portions of documents that reflect "the back and forth pre-decisional communications among"

attorneys and legal assistants from the U.S. Attorney's Office, "FBI agents, and other state and

federal [agents] involved in some way with the *Bernegger* litigation," as well as "draft unsigned

and undated pleadings prepared by the government attorney during plaintiff's criminal trial."

Dkt. 22-3 at 7 (Stone Decl. ¶ 27). According to Bernegger, "grave gov[ernment] misconduct in

and around his trial" precludes EOUSA from relying on the privilege. Dkt. 31 at 39.

The question whether Exemption 5 incorporates a "government misconduct" exception is

unsettled in the D.C. Circuit. *See, e.g.*, *Judicial Watch, Inc. v. U.S. Dep't of State*, 285 F. Supp.

3d 249, 253 (D.D.C. 2018); *Judicial Watch, Inc. v. U.S. Dep't of Commerce*, No. 15-cv-2088,

2017 WL 3822733, at *2 (D.D.C. Aug. 21, 2017); *Neighborhood Assistance Corp. of Am. v. U.S.

Dep't of Hous. & Urban Dev.*, 19 F. Supp. 3d 1, 13 (D.D.C. 2013). Bernegger points to *In re

Sealed Case*, 121 F.3d 729 (D.C. Cir. 1997), in support of his contention that such an exception

exists. In that case, the D.C. Circuit did observe that, because the "deliberative process privilege

is a qualified privilege," it may be overcome "where there is reason to believe the documents

sought may shed light on government misconduct." *Id.* at 737–78 (quoting *Texaco P.R., Inc. v.

Dep't of Consumer Affairs*, 60 F.3d 867, 885 (1st Cir. 1995)). *In re Sealed Case*, however,

concerned a grand jury subpoena, not FOIA, and the D.C. Circuit expressly disclaimed that

"[t]his characteristic of the deliberative process privilege" extends to "FOIA cases." *Id.* at 737

n.5.  As the court explained, FOIA differs from a subpoena "because the courts have held that the particular purpose for which a FOIA plaintiff seeks information is not relevant in determining whether FOIA requires disclosure."  *Id.*

But, even assuming that a "government misconduct" exception does apply, courts agree that a "plaintiff must meet a high bar to properly invoke it."  *Judicial Watch, Inc.*, 285 F. Supp. 3d at 254; *see also Hall & Assocs. v. EPA*, 14 F. Supp. 3d 1, 9 (D.D.C. 2014) ("While there is little case law to guide the Court on what quantum of evidence must be shown to support the [government misconduct] exception, courts have recognized the need to apply the exception narrowly . . . ."); *ICM Registry, LLC v. U.S. Dep't of Commerce*, 538 F. Supp. 2d 130, 133 (D.D.C. 2008) ("In this court, the deliberative process privilege has been disregarded in circumstances of extreme government wrongdoing.").  Given this high bar, the Court has no difficulty concluding that Bernegger's unsubstantiated—and previously rejected—accusations of government misconduct fall far short of triggering the exception.

Finally, Bernegger argues that EOUSA improperly relied on the deliberative process privilege to redact one email.  *See* Dkt. 31 at 72.  Bernegger assumes that the redacted portion of the email contains the text of a proposed order that the U.S. Attorney's Office submitted to the court, and he argues that the redacted text could not have been deliberative because the proposed order was "sent [to] the trial court . . . three days earlier."  Dkt. 31 at 43.  Because the exhibit attached to Bernegger's opposition brief does not include a Bates number, the Court cannot determine whether, or how, the relevant email is described in the *Vaughn* index, and, more generally, the Court cannot determine whether Bernegger's speculation about the content and timing of the redacted email is correct.  To resolve this uncertainty, the Court will direct EOUSA

to provide the Court with an unredacted copy of the email for *ex parte*, *in camera* review.  *See* 5 U.S.C. § 552(a)(4)(B).

**E.      Segregability**

FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions [that] are exempt."  5 U.S.C. § 552(b).  "While the segregability requirement applies to all documents and all exemptions in the FOIA," the courts have recognized that "segregation is not required where the 'exempt and nonexempt information are inextricably intertwined, such that the excision of exempt information would impose significant costs on the agency and produce an edited document with little informational value.'"  *Covington v. McLeod*, 646 F. Supp. 2d 66, 72 (D.D.C. 2009) (quoting *Mays v. Drug Enf't Admin.*, 234 F.3d 1324, 1327 (D.C. Cir. 2000)) (first citation omitted).  The government bears "the burden of justifying nondisclosure," *Mead Data Cent., Inc. v. U.S. Dep't of the Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977), and must "show with reasonable specificity why the documents cannot be further segregated," *Armstrong v. Exec. Office of the President*, 97 F.3d 575, 578 (D.C. Cir. 1996) (internal quotation marks omitted).  To carry this burden, the government must provide a "'detailed justification' for [withheld records'] non-segregability."  *Johnson v. Exec. Office for U.S. Attorneys*, 310 F.3d 771, 776 (D.C. Cir. 2002) (quoting *Mead*, 566 F.2d at 261).

Bernegger objects to EOUSA's representation that it reviewed the responsive records and determined that "all reasonably segregable non-exempt material" was released, Dkt. 22-3 at 10–11 (Stone Decl. ¶¶ 42–43), on the ground that Stone's declaration must be struck for failure to comply with the personal knowledge requirement of Federal Rule of Civil Procedure 56(c).  As the Court discussed above, that argument is meritless.  The Court, moreover, has reviewed

EOUSA's *Vaughn* index, *see* Dkt. 22-3 at 13–26 (Stone Decl. Ex. A), and concludes that it

supports EOUSA's contention that it has released reasonably segregable material.

## F.    Privacy Act

Bernegger also brings suit under the Privacy Act.  Dkt. 11 at 8 (Am Compl. ¶ 47).  The

preceding discussion of Bernegger's FOIA claim does not, standing alone, resolve his Privacy

Act claim because "[t]he two acts explicitly state that access to records under each is available

without regard to exemptions under the other."  *Martin v. Office of Special Counsel*, 819 F.2d

1181, 1184 (D.C. Cir. 1987).  The Court must, accordingly, separately consider whether the

records at issue are subject to disclosure under the Privacy Act.  *Id.*; *see also Campbell v. U.S.*

*Dep't of Justice*, 133 F. Supp. 3d 58, 68 (D.D.C. 2015).

Under section (j)(2) of the Privacy Act, "[t]he head of any agency" is authorized to

"promulgate rules . . . to exempt any system of records within the agency from" the disclosure

requirement if, (1) "the system of records is . . . maintained by an agency . . . which performs as

its principal function any activity pertaining to the enforcement of criminal laws," and (2) the

system of records "consists of . . . information compiled for the purpose of a criminal

investigation . . . or . . . reports . . . compiled at any stage of the process of enforcement of the

criminal laws . . . ."  5 U.S.C. § 552a(j)(2).  Relying on this authority, the Attorney General has

promulgated a rule exempting all "[c]riminal [c]ase [f]iles" from, among other provisions, the

Privacy Act's disclosure requirement.  28 C.F.R. § 16.81(a)(4).  According to EOUSA, this

exemption provides ample basis to reject Bernegger's Privacy Act claim.  Dkt. 22-1 at 31–32.

Bernegger, in turn, argues that EOUSA's Exemption (j)(2) defense fails for three reasons:

First, EOUSA failed to raise the exemption in its responsive pleading and thus waived the

defense.  Second, the declarations on which EOUSA relies are "null and void."  Third, email

communications are not maintained in "criminal case files" and therefore fall outside the

exemption.  For the reasons explained above, Bernegger's second argument is a nonstarter: the

declarations submitted by EOUSA are not defective.  Nor was EOUSA required to assert the

exemption in its responsive pleading.  No such a requirement exists in the FOIA context, *see,

e.g.*, *Ctr. for Pub. Integrity v. FCC*, 505 F. Supp. 2d 106, 113 (D.D.C. 2007); *Sciba v. Bd. of

Governor of Fed. Reserve Sys.*, No. 04-cv-1011, 2005 WL 758260, at *1 n.3 (D.D.C. Apr. 1,

2005) (explaining that the case law does "not specify . . . that FOIA Exemptions must be made in

the answer to the complaint"), and the Court sees no basis to apply a different approach under the

Privacy Act.  To be sure, just as "an agency may waive the right to raise certain exemptions

[under FOIA] if it fails to raise them prior to the district court ruling in favor of the other party,"

*Judicial Watch v. Dep't of Army*, 466 F. Supp. 2d 112, 123–24 (D.D.C. 2006); *see also Shapiro

v. U.S. Dep't of Justice*, No. 13-cv-555, 2016 WL 3023980, at *2–3 (D.D.C. May 25, 2016)

(discussing "belated" invocation of FOIA exemptions), it may waive any Privacy Act defenses

that are not raised in briefing dispositive motions.  There is no requirement, however, that an

agency identify specific exemptions in its answer.

Finally, Bernegger argues that EOUSA cannot apply Exemption (j)(2) to the emails he

requested because they were not maintained in a "criminal case file" and, therefore, are not

covered by the exemption.  Dkt. 31 at 18–19.  The Court need not reach that question, however,

because an email database, like that at issue here, does not constitute a "system of records" and,

thus, is not subject to the Privacy Act's disclosure requirement in the first place.  *See House v.

U.S. Dep't of Justice*, 197 F. Supp. 3d 192, 210 (D.D.C. 2016).  The Privacy Act defines a

"system of records" as "a group of any records under the control of any agency from which

information is retrieved by the name of the individual or by some identifying number, symbol, or

other identifying particular assigned to the individual."  5 U.S.C. § 552a(a)(5).  Decisions from

this district "have consistently held that . . . email archives," like the email databases at issue here, *see* Dkt. 22-4 at 4–5 (Gill Decl. ¶¶ 14–16) (describing search of active and archived email systems), "are not 'systems of records' under the Privacy Act because they are not indexed by personal identifier." *Gordon v. Courter*, 118 F. Supp. 3d 276, 290–91 (D.D.C. 2015); *see also Campbell*, 133 F. Supp. 3d at 69 (agreeing with *Gordon*); *Mobley v. CIA*, 806 F.3d 568, 587 (D.D.C. 2015) (holding database of "e-mail traffic to and from other intelligence agencies" was not a "system of records" because the agency "does not organize records in [the ... database] by individuals who may be mentioned in those records, nor does [it] retrieve records about individuals from that database by use of an individual's name or personal identifier as a matter of practice."); *Krieger v. U.S. Dep't of Justice*, 529 F. Supp. 2d 29, 42–43 (D.D.C. 2008) (explaining that the fact that emails could be searched by name or other identifier was insufficient to render them a "system of records" within the meaning of the Privacy Act).

The Court, accordingly, concludes that EOUSA was not required by the Privacy Act to search for or to produce records maintained in active or archived email systems.

## G.     Discovery

Bernegger has also filed a motion for discovery, once again arguing that the government's "bad faith" justifies extraordinary relief.  He maintains, for example, that EOUSA failed to account for "missing" documents; that it failed to conduct a search according to his specifications; that it failed to provide the age of the computers searched; and that the U.S. Attorney's Office and others have engaged in a long pattern of government misconduct.  *See* Dkt. 30.  Although courts may permit discovery in FOIA cases "where a 'plaintiff has made a sufficient showing that the agency acted in bad faith,'" *Justice v. IRS*, 798 F. Supp. 2d 43, 47 (D.D.C. 2011) (quoting *Voinche v. FBI*, 412 F. Supp. 2d 60, 72 (D.D.C. 2006)), Berneggger has not come close to carrying this heavy burden, *see Schrecker v. U.S. Dep't of Justice*, 217 F.

Supp. 2d 29, 35 (D.D.C. 2002) ("Discovery in FOIA is rare and should be denied where an agency's declarations are reasonably detailed [and] submitted in good faith and [where] the court is satisfied that no factual dispute remains."). The Court will, accordingly, deny Bernegger's motion for discovery.

**CONCLUSION**

Defendant's motion for summary judgment, Dkt. 22, is hereby **GRANTED** in part and **DENIED** in part. EOUSA shall either (1) release unredacted versions of the emails sent to or from the United States District Court for the Northern District of Mississippi, or (2) file a further declaration explaining why those redactions are appropriate, notwithstanding the important public interest in access to judicial filings. In addition, EOUSA shall provide the Court with an unredacted version of the email reproduced on the top of page 72 of Dkt. 31 for *ex parte*, i*n camera* review. Pending the Court's review of those further submissions from EOUSA, Plaintiff's cross-motion for partial summary judgment, Dkt. 29, is **DENIED** without prejudice. Finally, Plaintiff's motion for discovery, Dkt. 30, is also **DENIED**.

        **SO ORDERED**.


                                                                        /s/ Randolph D. Moss
                                                                        RANDOLPH D. MOSS
                                                                        United States District Judge


Date:  September 20, 2018